TIMOTHY WOODS *et al.*, Plaintiffs-Appellants, v. NORTH PIER TERMINAL COMPANY, Defendants (North Pier Terminal Company, Appellee).

First District (4th Division) No. 84—56

Opinion filed February 7, 1985.

Ernest T. Rossiello, of Chicago, for appellants.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Jay S. Nelson, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Timothy Woods (Woods) appeals from the order of the Cook County circuit court which entered summary judgment in favor of North Pier Terminal Company, Inc. (North Pier). Woods had filed suit against North Pier to recover damages for personal injuries he allegedly sustained while employed at Navy Pier, which Woods claimed North Pier leased, maintained, or otherwise controlled pursuant to a lease agreement with the city of Chicago. The sole issue presented for our review is whether North Pier's agreement with Woods' employer, Ceres, Inc. (Ceres), to assign North Pier's lease of Navy Pier to Ceres was valid where the city of Chicago never formally consented to the assignment although consent was required under the terms of the lease.

We affirm.

Woods' complaint alleged that he was injured on June 13, 1977, while employed by Ceres as a longshoreman at Navy Pier, when he slipped and fell on an oil slick in a warehouse at the pier. He alleged that the premises were leased, operated, supervised, managed, maintained or otherwise controlled by North Pier at the time of his injury because of North Pier's agreement with the city of Chicago to lease the property. This agreement was dated May 5, 1976. By its terms, the period of the leasehold commenced January 1, 1976, and terminated December 31, 1978. The lease provided in pertinent part that North Pier could assign its interest only upon approval from the city of Chicago. Article II of the agreement specifically stated in relevant part:

> "The tenant shall not, without prior approval of Landlord, assign or transfer this agreement nor any share, part or interest therein, or any of the rights or privileges granted hereby, nor enter into any contract requiring or permitting the doing of anything hereunder by an independent contractor unless otherwise expressly provided herein. Tenant further agrees that it shall not enter into agreements of any nature, formal or informal, concerning other business or corporation without prior approval of Landlord ***."

The lease further obligated North Pier to maintain the premises in safe condition and reasonable repair and required it to obtain specified types of insurance coverage in case of property damage or personal injury.

North Pier's motion for summary judgment contended that an effective assignment of this lease to Ceres had occurred prior to Woods' injuries. In support, North Pier presented an assignment agreement

between it and Ceres dated February 1, 1977; correspondence from the commissioner of public works of the city of Chicago to North Pier dated April 4, 1977, which expressed its intent to consent to the assignment to Ceres; and a resolution of the Chicago city council dated August 1, 1977, which authorized the commissioner of public works to execute on behalf of the city of Chicago a consent to the assignment agreement between North Pier and Ceres.

Although consent was thereby authorized, no formal instrument was ever executed by the commissioner of public works or any other authorized governmental official.

Based upon the parties' pleadings, documents, and written and oral argument, the trial court found that North Pier had assigned its leasehold interest to Ceres and was therefore not liable for Woods' alleged injuries. It entered summary judgment in favor of North Pier accordingly. Woods' timely appeal followed.

Woods argues on appeal that summary judgment was improperly granted here because the facts do not establish North Pier's valid and effective assignment of its lease to Ceres. He initially claims that the purported assignment was a nullity because it did not comply with the provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—1 et seq.), which set forth the manner in which a municipality may lease its real property (Ill. Rev. Stat. 1979, ch. 24, par. 11—76—1 et seq.). Woods does not specify which provision of the Act was violated, however, and our research has discovered no deviation from its requirements here. We find no merit to Woods' contention.

Woods further suggests that the assignment was invalid because it failed to comply with the terms of the lease agreement. In this regard, he correctly observes that common law rules of landlord-tenant govern the validity of the assignment, as a municipality leases its property in its proprietary capacity and is therefore held to the same legal standards applicable to any landlord. (*Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District* (1980), 81 Ill. App. 3d 1005, 1011, 401 N.E.2d 1203; *Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary District* (1970), 131 Ill. App. 2d 527, 529, 266 N.E.2d 405.) Applying these criteria, however, the assignment was not invalid.

It is well established that restrictions against assignment are intended solely for the benefit of the lessor. (*Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 319, 320 N.E.2d 598; *Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 461, 161 N.E.2d 339.) Where a tenant has attempted assignment of a lease in contravention to its terms, the assignment is not void but merely voidable by the landlord. (*Waukegan*

*Times Theatre Corp. v. Conrad* (1945), 324 Ill. App. 622, 632, 59 N.E.2d 308.) If the landlord does not elect to treat the leasehold as void, the requirements of the lease regarding assignment are deemed waived. *Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 320 N.E.2d 598; *Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 161 N.E.2d 339.

Even assuming that the lessor here, the city of Chicago, never formally consented to the assignment of North Pier's lease to Ceres, nevertheless the assignment was valid because of the city's waiver of the requirement of consent to the assignment. The record is devoid of any evidence indicating that the city ever elected to treat North Pier's lease as void on the ground that the attempted assignment was a breach of the lease agreement. Further, Woods has made no argument at any point in the proceedings before the trial court or in this appeal to establish that the city objected to the assignment. Indeed, we question whether Woods is the proper party to raise any question of the validity of the assignment, as this issue is properly presented by the landlord himself and if he "does not object to a breach of the restriction [against assignment] no one else can do so." (24 Ill. L. & Prac. *Landlord & Tenant* sec. 83, at 204 (1980).) Consequently, we conclude that the assignment was valid and effective.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.